# UNITED STATES DISTRICT COURT
## DISTRICT OF IDAHO

| | |
|---|---|
| TONYA L. SHIPTON, | |
| | Case No. CV 12-482-S-REB |
| Petitioner, | |
| | **MEMORANDUM DECISION AND ORDER** |
| vs. | |
| CAROLYN W. COLVIN, Commissioner of Social Security, | |
| Respondent. | |

Now pending before the Court is Petitioner Tonya L. Shipton's Petition for Review (Dkt. 1), filed September 18, 2012, seeking review of the Social Security Administration's final decision to deny her disability benefits. This action is brought pursuant to 42 U.S.C. § 405(g). Having carefully reviewed the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order.

## I. ADMINISTRATIVE PROCEEDINGS

On July 23, 2009, Tonya L. Shipton ("Petitioner") applied for Social Security Disability Insurance and Supplemental Security Income Benefits, alleging a disability onset date of May 16, 2004, when she was 40 years old. AR 24. Petitioner's claim was initially denied and, again, denied on reconsideration. AR 127, 130. Petitioner timely filed a Request for Hearing before an Administrative Law Judge ("ALJ"). On January 24, 2011, ALJ Lloyd E. Hartford held a hearing at which time Petitioner, represented by attorney Jacob Bernhardt, appeared and testified. AR 47-126. Medical expert Kristy Farnsworth, vocational expert Anne Aastum, and two witnesses

**MEMORANDUM DECISION AND ORDER - 1**

for the claimant, Dr. David Nilsson and her father, James Harshfield, appeared and testified as well. *Id*. At the time of the hearing, Petitioner had past relevant work as a fast food worker. AR 33.

On March 31, 2011, the ALJ issued a decision, denying Petitioner's claims, finding that Petitioner was not disabled within the meaning of the Social Security Act. AR 24-34. Petitioner timely requested review from the Appeals Council on June 20, 2011. AR 7-12. The Appeals Council then denied review on July 31, 2012 (AR 1-6) rendering the ALJ's decision the Commissioner's final decision. Plaintiff now seeks judicial review of the Commissioner's decision to deny benefits. Petitioner contends the ALJ erred by failing to properly consider all of her severe impairments, made an improper credibility determination of Petitioner and did not properly consider the lay evidence or properly weigh the medical opinion evidence.

## II. STANDARD OF REVIEW

To be upheld, the Commissioner's decision must be supported by substantial evidence and based on proper legal standards. 42 U.S.C. § 405(g); *Matney ex. rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990). Findings as to any question of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g). In other words, if there is substantial evidence to support the ALJ's factual decisions, they must be upheld, even when there is conflicting evidence. *Hall v. Sec'y of Health, Educ. & Welfare*, 602 F.2d 1372, 1374 (9th Cir. 1979).

"Substantial evidence" is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993); *Flaten v. Sec'y of Health & Human*

*Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995).  The standard requires more than a scintilla but less than a preponderance, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir.1975); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989), and "does not mean a large or considerable amount of evidence."  *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the role of the Court is to review the record as a whole to determine whether it contains evidence that would allow a reasonable mind to accept the conclusions of the ALJ.  *See Richardson*, 402 U.S. at 401; *see also Matney*, 981 F.2d at 1019. The ALJ is responsible for determining credibility and resolving conflicts in medical testimony, *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984), resolving ambiguities, *see Vincent ex. rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984), and drawing inferences logically flowing from the evidence, *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).  Where the evidence is susceptible to more than one rational interpretation in a disability proceeding, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ.  *Flaten*, 44 F.3d at 1457; *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).

With respect to questions of law, the ALJ's decision must be based on proper legal standards and will be reversed for legal error.  *Matney*, 981 F.2d at 1019.  The ALJ's construction of the Social Security Act is entitled to deference if it has a reasonable basis in law. *See id*.  However, reviewing federal courts "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute."  *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

**MEMORANDUM DECISION AND ORDER - 3**

# III. DISCUSSION

## A.    Sequential Process

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled in general (*see* 20 C.F.R. §§ 404.1520, 416.920) - or continues to be disabled (*see* 20 C.F.R. §§ 404.1594, 416.994) - within the meaning of the Social Security Act.

The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity ("SGA").  20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I).  SGA is defined as work activity that is both substantial and gainful.  "Substantial work activity" is work activity that involves doing significant physical or mental activities.  20 C.F.R. §§ 404.1572(a), 416.972(a).  "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized.  20 C.F.R. §§ 404.1572(b), 416.972(b).  If the claimant has engaged in SGA, disability benefits are denied, regardless of how severe her physical/mental impairments are and regardless of her age, education, and work experience.  20 C.F.R. §§ 404.1520(b), 416.920(b).  If the claimant is not engaged in SGA, the analysis proceeds to the second step.  Here, the ALJ found that Petitioner had not engaged in SGA after March 1, 2008, the alleged onset date.  AR 26.

The second step requires the ALJ to determine whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the duration requirement.  20 C.F.R. § 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  An impairment or combination of impairments is "severe" within the meaning of the Social Security Act if it significantly limits an individual's ability to perform basic work activities.  20 C.F.R. §§ 404.1520(c), 416.920(c).

**MEMORANDUM DECISION AND ORDER - 4**

An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work.  20 C.F.R. §§ 404.1521, 416.921. If the claimant does not have a severe medically determinable impairment or combination of impairments, disability benefits are denied.  20 C.F.R. §§ 404.1520(c), 416.920(c).  Here, the ALJ found that Petitioner had the following severe impairments: bipolar disorder, post traumatic stress disorder (PTSD), personality disorder, and a learning disorder.  AR 26.

The third step requires the ALJ to determine the medical severity of any impairments; that is, whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the answer is yes, the claimant is considered disabled under the Social Security Act and benefits are awarded.  20 C.F.R. §§ 404.1520(d), 416.920(d).  If the claimant's impairments neither meet nor equal one of the listed impairments, the claimant's case cannot be resolved at step three and the evaluation proceeds to step four.  *Id*.  Here, the ALJ concluded that Petitioner does not have an impairment (or combination of impairments) that meets or medically equals a listed impairment AR 27.

The fourth step of the evaluation process requires the ALJ to determine whether the claimant's residual functional capacity is sufficient for the claimant to perform past relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  An individual's residual functional capacity is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments.  20 C.F.R. §§ 404.1545, 416.945.  Likewise, an individual's past relevant work is work performed within the last 15 years or 15 years prior to the date that

disability must be established; also, the work must have lasted long enough for the claimant to learn to do the job and be engaged in substantial gainful activity. 20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965. Here, the ALJ determined that Petitioner has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant has a marked limitation in the ability to understand and remember detailed instructions, and a moderate limitation in the ability to carry out detailed instructions; she has a moderate limitation in the ability to maintain attention and concentration for extended periods; the claimant has a moderate degree of limitation in the ability to accept instruction and respond appropriately to criticism from supervisors; the claimant has moderate limitations in adapting to changes in a workplace routine; she has a moderate limitation in the ability to set realistic goals and make plans independent of others. AR 27-28. The ALJ also determined that Petitioner was capable of performing past relevant work as a fast food worker and, therefore, not disabled. AR 33-34.

In the fifth and final step, if it has been established that a claimant can no longer perform past relevant work because of his impairments, the burden shifts to the Commissioner to show that the claimant retains the ability to do alternate work and to demonstrate that such alternate work exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1520(f), 416.920(f); *see also Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993). If the claimant is able to do other work, he is not disabled; if the claimant is not able to do other work and meets the duration requirement, he is disabled. Although the ALJ found Petitioner not disabled at step four, he also found, at step 5, that she is capable of making a successful adjustment to other work that exists in significant numbers in the national economy.

**MEMORANDUM DECISION AND ORDER - 6**

AR 33-34.

**B.      Analysis**

**1.      Overview**

The ALJ's decision, while it discusses a broad range of all the evidence and testimony, is deficient in that it does not sufficiently provide, or consider, the context for much of the testimony and evidence that the ALJ relies upon in finding that Petitioner is not disabled.  *See Reddick v. Chater*, 158 F.3d 715, 722-23 (9th Cir. 1998) (ALJ's paraphrasing of the record is not entirely accurate regarding the content or tone of the record).  The full record, considered in context, does not support the ALJ's decision, even under a deferential standard of review.  Significantly, an ALJ cannot "selectively focus" on evidence that tends to suggest nondisability.  *Edlund v. Massanari*, 253 F.3d 1152, 1159 (9th Cir. 2001).  With this in mind, the Court issues the following decision.

**2.      Medical Evidence**

Petitioner takes issue with the ALJ's treatment of examining physician Dr. Nilsson's report and testimony and argues the ALJ improperly gave too much weight to the opinion of the medical expert, Dr. Farnsworth.

Ninth Circuit case law distinguishes among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians).  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  Generally, more weight is accorded to the opinion of a treating source than to nontreating physicians.  *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir.1987).   In turn, an examining physician's opinion

is entitled to greater weight than the opinion of a nonexamining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir.1990); *Gallant v. Heckler*, 753 F.2d 1450 (9th Cir.1984). If the treating physician's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir.1991). If the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject the treating physician's opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for doing so. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir.1983).

An ALJ is not required to accept an opinion of a treating physician if it is conclusory and not supported by clinical findings. *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). Additionally, an ALJ is not bound to a physician's opinion of a petitioner's physical condition or the ultimate issue of disability. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). If the record as a whole does not support the physician's opinion, the ALJ may reject that opinion. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). Items in the record that may not support the physician's opinion include clinical findings from examinations, conflicting medical opinions, conflicting physician's treatment notes, and the claimant's daily activities. *Id.*; *Bayliss v. Barnhart*, 427 F.3d at 1216; *Connett v. Barnhart*, 340 F.3d 871 (9th Cir. 2003); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595 (9th Cir. 1999).

The ALJ states he affords the opinion of Dr. Nilsson "little weight" for the following reasons: his opinion is heavily reliant upon a neuropsychological examination he performed in December 2010, is not consistent with Petitioner's past employment and level of functioning exhibited in other evidence of record, and is contradicted by Petitioner's ability to pass a

Certified Nursing Assistant (CNA) licensing examination. AR 32.

Dr. Nilsson's report is the most objective medical evidence in the record. He and his Ph.D assistant conducted several neuropsychological tests on Petitioner. The result of such testing is that Petitioner suffers from a specific brain injury acquired early in life, such as fetal alcohol syndrome, that severely impacts her ability to reason and problem solve. It also indicates that she is needs significant persistence, structure, and external support in completing her activities of daily routine. AR 388-395.

With regard to Petitioner's prior work history, the ALJ cites to her work history from 1998, 1999, 2001, 2002, 2003 and 2004. *See* AR 120. Petitioner's work history prior to her alleged onset date (March 2008) which indicates she was capable of performing substantial gainful activity during those years is not a specific and legitimate reason for rejecting Dr. Nilsson's opinion. While evidence of employment "*during* any period" of claimed disability may be probative of claimant's ability to work, 20 C.F.R. §§ 440.1571, 416.951 (emphasis added), that does not mean her work history from *at least* four years prior to the alleged onset date is similarly probative. Further, these years of employment coincide with the time when she was married and it was indicated at the hearing that the level of support provided to Petitioner by her ex-husband was an important factor in her ability to find and maintain employment. *See* AR116, 122, 123. Further, a closer look at the record shows that Petitioner's work shows multiple jobs of relatively short duration, even in the same year. This indicates that she cannot hold a job for a significant period of time, which would be consistent with testimony and Dr. Nilsson's report about her ability to follow through and stay focused. *See* AR 226-234.

With respect to the CNA examination, the ALJ overstates the importance of Petitioner

passing this examination in rejecting Dr. Nilsson's opinion. While it is indeed relevant, the ALJ

gives no credence to explanatory and uncontradicted testimony and evidence that explains *how*

she took the classes and passed the licensing examination. Petitioner's father testified, discussed

further *infra*, that he and his wife did all of Petitioner's work along side of her and literally

coached her through the entire course and examination.[1] His testimony about the difficulties

Petitioner had in trying to complete the course and take the CNA examination, as well as the

difficulties she has in staying on task, and doing tasks, around their household, are consistent and

corroborative of the brain injury deficits that Dr. Nilsson described and opined upon. Hence,

even though the Petitioner's work history and CNA license are relevant to the disability

determination, the ALJ gives them more weight than they are entitled in the context of how they

occurred and their surrounding circumstances.

With respect to the treatment notes from the mental health clinic, these do indicate a

higher level of functioning than that found by Dr. Nilsson. However, the context of her mental

health treatment must be considered. Petitioner received mental health treatment following her

suicide attempt in 2008. Much of the treatment notes discuss Petitioner's improvement in terms

of mood and her bipolar disorder and how she is handling her medications. They do *not* address

her ability to work or her brain deficits, but rather focus on whether she is having any 'psychotic

or manic symptoms.' *See* AR 347-52. While these treatment notes do reflect that Petitioner is

improving in terms of her bipolar diagnosis, they are not a clear and convincing reason for

---

[1] Petitioner's father testified that he researched and essentially wrote the paper she needed to pass the class and that he and his wife had a list of questions that would be on the CNA examination and reviewed them with Petitioner over and over again. Further, he said that even though she had passed the CNA examination, in hindsight he did not think she could maintain employment as a CNA. AR 113-155.

rejecting the opinion of Dr. Nilsson, which is focused on a neurologic injury. The fact that her

mood is stable and improved does not make discount Dr. Nilsson's findings that Petitioner has

significant cognitive limitations in terms of reasoning and problem solving.

As an examining physician, Dr. Nilsson's opinion is entitled to more weight than

nonexamining physicians such as Dr. Farnsworth and Drs. Stephenson and Sanford. Even if

those opinions conflict with Dr. Nilsson's, the ALJ still must provide specific and legitimate

reasons for rejecting his opinion. While the ALJ does provide reasons that may be valid

otherwise, as discussed *supra*, again, such reasons speak too little or not at all to the context in

which they occur. Yes, Petitioner passed a CNA examination, but only with step-by-step

assistance of, and with course work being done for her by, her parents throughout the entire

course. Similarly, while she did have jobs that amounted to substantially gainful activity in

earlier years, these were achieved with the support and assistance of her ex-husband. The record

also reflects that Petitioner did not maintain these jobs for substantial lengths of time. The

context of these "reasons" given by the ALJ for rejecting an examining physician's opinion are

just as important the reasons themselves. Accordingly, the Court finds that the ALJ improperly

rejected or gave too little weight to the opinion of Dr. Nilsson and remands for further

consideration of his opinion. [2]

---

[2] Petitioner also takes issue with the fact that a report from Phares Book, Psy.D. (AR 419-24) was never considered as it was provided to the Appeals Council but never reviewed because Petitioner's request for review was declined. Pet.'s Brief, p. 17. This report is a Guardian Ad Litem report prepared in conjunction with court proceedings to determine custody for Petitioner's two young children. Specifically, Petitioner points out that this report states: "[Petitioner] has cognitive impairment that is so substantial that she should not be responsible for these children or maintain legal or physical custody of them alone." AR 424. A court should remand for consideration of "new" evidence *if* that evidence is material, meaning there is a reasonable possibility it would change the ALJ's decision. *See Booz v. Sec'y of Health &*

**MEMORANDUM DECISION AND ORDER - 11**

### 3.      Severe Impairments/Residual Functional Capacity

While the Court recognizes that the severity requirement is a *de minimis* screening device used to dispose of groundless claims, the Court also notes even if an impairment is improperly determined to be not severe at step two, the error is harmless if the ALJ nonetheless considers any limitations caused by the impairment when determining a claimant's residual functional capacity.  *See Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996); *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

Given the Court's discussion of Dr. Nilsson's opinion *supra*, the Court finds that this step of the sequential process should be reevaluated once Dr. Nilsson's report and opinion is properly considered.

### 4.      Lay Witness Testimony

Petitioner contends the ALJ erred by giving little weight to the lay evidence presented by Petitioner's adoptive father, James Harshfield, and wrongfully evaluated his testimony as a "non medical source."

An ALJ must consider evidence from sources other than the claimant, including family members and friends, to show the severity of a claimant's impairment.  20 C.F.R. § 404.1513(d)(4); *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006).  The ALJ is

---

*Human Servs.*, 734 F.2d 1378, 1380-81 (9th Cir. 1984).  Material also means the new evidence bears "directly and substantially on the matter in dispute."  *Ward v. Schweiker*, 686 F.2d 762, 764 (9th Cir. 1982).  Dr. Book's report is not new medical evidence, it is a guardian ad litem report completed for the court in Petitioner's child custody case with her ex-husband.   The Court finds that this "new" evidence is not material as it does bear "directly and substantially" on the issue of Petitioner's disability and that remanding on just this issue is not appropriate. However, the Court does find the evidence to be relevant and it *should* be considered by the ALJ upon remand.

required to consider competent lay testimony, but in rejecting such evidence, he must only give reasons for doing so that are "germane to [the] witness." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008).

As with Dr. Nilsson's report, the Court concludes while the ALJ does provide reasons for rejecting Dr. Harshfield's testimony and opinions regarding his daughter's limitations, he does not sufficiently consider the context and evidence of such testimony. There is no problem with giving less credence to Dr. Harshfield because he is a "non medical source," despite Petitioner's argument in that regard, but the other reasons given by the ALJ do not satisfy the applicable standard.

Similar to what Dr. Nilsson provided in his report and testimony, Dr. Harshfield, Petitioner's father, testified to just how much support and care Petitioner needs in order to function on a daily basis. He stated she needs constant reminders and directions when cleaning the house and taking care of her children. He testified that he and his wife did all her course work with her for her CNA class and coached her through the examination process. He stated without their support, she could not function. AR 112-125. Dr. Harshfield testified that Petitioner needs someone to keep her in line all the time or else she is unable to complete tasks. He stated she gets confused easily and is not capable of following through with most tasks. The Petitioner was in his household during her growing up years. He has been around her and observed her during her married adult years, even though she was not living in his household. Now, she and her two youngest children are living in his household again. He has a substantial amount of knowledge and experience to draw on in testifying about what she is able to do and what she cannot do, and his testimony is consistent with the report of Dr. Nilsson who discussed

the amount of support someone with Petitioner's deficits needs in order to function.

The ALJ, however, gave similar reasons for rejecting Dr. Harshfield's opinion as he did Dr. Nilsson's, primarily by referencing her past work history and her medical treatment records. The Court incorporates its discussions of these *supra* in its analysis of Dr. Nilsson's opinion. The ALJ leaves behind the context of this evidence, and without such context his conclusions are not supportable.

As a result, the ALJ did not provide a fair account of Dr. Harshfield's testimony. Lay witnesses are in the position to provide competent testimony as they observe the claimant on a regular basis. The Court finds, that particularly in light of the ALJ's incomplete consideration of Dr. Nilsson's opinion, it is unclear whether Dr. Harshfield's description of Petitioner's difficulties in completing tasks, staying focused, and need for constant support and oversight would have resulted in the same RFC or disability determination.

**5.     Petitioner Credibility**

Because the Court has already determined that this case should be remanded for the reasons discussed *supra*, it will not get into an in depth review of the ALJ's credibility determination as to Petitioner. The Court found Petitioner's testimony to be relevant but also attenuated from the ultimate issue of her functional limitations and ability to work.

**IV.  CONCLUSION**

The ALJ is the fact-finder and is solely responsible for weighing and drawing inferences from facts and determining credibility. *Allen*, 749 F.2d at 579; *Vincent ex. rel. Vincent*, 739 F.2d at 1394; *Sample*, 694 F.2d at 642. If the evidence is susceptible to more than one rational interpretation, one of which is the ALJ's, a reviewing court may not substitute its interpretation

for that of the ALJ. *Key*, 754 F.2d at 1549.

However, the ALJ did not properly consider all of the evidence. As discussed at the outset, the Court finds that the ALJ failed to consider all the evidence because his decision fails to incorporate the context and interconnections of the relevant testimony, particularly the testimony of Dr. Nilsson and Petitioner's adoptive father, Dr. Harshfield. The ALJ cannot pick and choose from the record and cite only the evidence that supports his conclusion. There is evidence that Petitioner has severe functional limitations that are supported by objective medical evidence in the record.

This is not to say that this Court conclusively finds that Petitioner is disabled. Relatedly, it is not for this Court to resolve the question of whether Petitioner is disabled when considering all the relevant medical evidence and how Dr. Nilsson's and Dr. Harshfield's opinions may factor into the ALJ's determination. Rather, the Court is tasked with reviewing the basis of the ALJ's decision, highlighting those areas that may call into question the decisions reached by the ALJ, and, in doing so, should not be misunderstood as substituting its own judgment for that of the ALJ.

The Court finds the cumulative nature of the ALJ's decision does not afford the Court confidence that the ALJ fully considered all the evidence in the record, at least how it is reflected in the decision. This action is therefore remanded.

## V. ORDER

Based on the foregoing, Petitioner's request for review (Dkt. 1) is hereby GRANTED. This matter is remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Memorandum Decision and Order. *See Melkonyan v. Sullivan*, 501 U.S. 89,

**MEMORANDUM DECISION AND ORDER - 15**

99-100 (1991).



DATED: **March 31, 2014**

_____
Honorable Ronald E. Bush
U. S. Magistrate Judge